| | |
|---|---|
| **DROR ZEPLOVITCH and SHACHAR ZEPLOVITCH**,<br><br>    Plaintiffs,<br><br>v.<br><br>**HUBX LLC, d/b/a HUBX INC., LAPTOP PLAZA, INC., DEREK WALL, and VLADMIR GALKIN,**<br><br>    Defendants. | Civ. No. 2:20-cv-02625 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this matter, Plaintiffs assert contract, quasi-contract, and tort claims stemming from Defendants' alleged breach of the parties' employment contract and related promises. Before the Court is Defendants' Motion to Dismiss, ECF No. 9, for (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) improper venue pursuant to Fed. R. Civ. P. 12(b)(3); and (3) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

I.   **BACKGROUND**[1]

Plaintiffs Dror Zeplovitch and Shachar Zeplovitch, a father and son team of software engineers, reside in New Jersey and Maryland respectively. Compl., ECF No. 1, ¶¶ 1, 7, 8, 42. Plaintiffs seek compensation for breach of their employment contracts with HUBX LLC ("HUBX"). HUBX has its headquarters near Miami, in Medley Florida. *Id.* at ¶ 9. Laptop Plaza, Inc. ("Laptop Plaza") is also headquartered in Medley Florida. *Id.* at ¶ 11.

In Spring 2017, Motty Chen, Dror's longtime friend and professional collaborator, contacted Dror about performing project-based work for Defendant Laptop Plaza. ECF No. 1 at ¶¶ 13-21. From May 2017 to October 2017, Dror Zeplovitch performed part-time consultation work for Defendant Laptop Plaza from his home in Tenafly, New Jersey as an independent contractor. Compl., ECF No. 1, ¶¶ 13-22; ECF No. 13, at ¶¶ 5-8; ECF No. 13-1. Zeplovitch signed a "Business Consultant Agreement" and a "Nondisclosure Agreement," both prepared by Laptop Plaza, and both stating that Zeplovitch would work from "Tenafly, NJ." ECF No. 13 at ¶¶ 5, 6. During this time Dror worked to create an e-commerce website known as the LPX application, which was

---

[1] The following facts, taken from the Complaint, are accepted as true for the purpose of this Opinion.

ultimately successful. *Id.* at ¶ 22; ECF No. 13, at ¶ 8. In December 2017, during the companies' annual meeting in Miami, Defendants Derek Wall and Vladmir Galkin, CEOS of HUBX and Laptop Plaza, Inc. respectively, attempted to convince Dror to relocate to Miami and continue working for them there. ECF No. 1 at ¶ 24; ECF No. 13 at ¶¶ 11-14. Dror declined to relocate and continued his part-time work remotely from New Jersey until February 2018. ECF No. 1 at ¶ 24; ECF No. 13 at ¶ 15. When the HUBX application was established, Laptop Plaza's portal was shutdown, its products sold through HUBX, and most of Laptop Plaza's employees moved to HUBX. ECF No. 13 at ¶ 35, 36   In April 2018, Dror once again began working for HUBX, this time, spending most of the work week in Miami and commuting to New Jersey for some weekends, during which he sometimes performed work for HUBX. ECF No. 13 at ¶¶ 18-20, 28. On April 26, 2018, Dror informed Wall that he would continue working for HUBX for several more weeks before starting a new job at KPMG in New Jersey. *Id.* at 21-22. Eventually however, Dror signed an Offer of Employment with HUBX on May 13, 2018 while he was in New Jersey for the weekend. ECF No. 13-3 at 4 & ECF No. 13 at ¶¶ 28-30. He moved from New Jersey to Florida on June 30, 2018 and began working at HUBX in Miami, Florida on July 1, 2018. *Id.* Dror recruited Shachar Zeplovitch, who worked alternating weeks in Miami and Maryland, where he previously resided full-time. ECF No. 1 at ¶ 43. Dror became HUBX's Vice President of Technology. *Id.* at ¶ 44.

Following the disintegration of Wall and Dror Zeplovitch's working relationship, Wall emailed Dror a termination letter on May 17, 2019. ECF No. 1 at ¶ 67. Plaintiffs bring seven counts—contract, quasi-contract, and tort claims—stemming from alleged breached of their employment contract. They seek compensatory damages encompassing the value of stock options, three months of severance compensation, uncompensated moving expenses, and emotional distress. ECF No. 1 at 18.

Plaintiff contends that this Court has personal jurisdiction over Defendants because "many of the events giving rise to the claims asserted occurred in New Jersey; in particular, each Defendant knowingly and purposefully contacted, or aided and abetted a co-defendant's contact of, Plaintiffs in New Jersey in order to make many of the offers, promises, or misrepresentations at issue in this case." ECF No. 1 at ¶ 5. In sum, Plaintiffs argue that this Court has jurisdiction over this matter because of Dror Zeplovitch's work as a contractor while residing in New Jersey and because of Defendants' decision to recruit Dror, a New Jersey resident, as a full-time employee. ECF No. 13 at ¶ 40.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

"A Rule 12(b)(6) dismissal is appropriate if, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

### III. DISCUSSION

Defendants contend that this Court lacks personal jurisdiction over them. When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). As this court has not held an evidentiary hearing on the motion to dismiss for lack of personal jurisdiction, the "plaintiff need only establish a prima facie case of personal jurisdiction," and the Court must accept Plaintiffs' allegations as true and resolve all disputed facts in their favor. *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 96 (3d Cir.2004).

New Jersey's long-arm statute gives its courts jurisdiction over out-of-state defendants to the maximum extent allowed by the United States Constitution. *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971). Personal jurisdiction can be either general jurisdiction or specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Plaintiffs do not appear to argue that this Court possesses general personal jurisdiction over the Defendants. Under specific jurisdiction, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). The relevant inquiry is: (1) whether the defendant purposefully directed its activities' at the forum; (2) whether the plaintiff's claims must arise out of or relate to the defendant's activities; and (3) whether exercising personal jurisdiction offends traditional notions of fair play and substantial justice. *Danziger & De Llano, LLP*, 948 F.3d at 129–30 (internal citations and quotations omitted). Where the plaintiff's claims arise out of a contract, "'[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident.'" *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Generally, courts look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 at 479.

Plaintiffs assert that Defendants' following contacts with New Jersey establish specific personal jurisdiction: (1) Defendants were aware that Dror Zeplovitch resided in New Jersey when they asked him to work on several projects on a part-time basis; (2) Dror in fact worked on several projects in New Jersey; (3) Defendants knew that Dror was in New Jersey when they recruited him to work for them in Florida; (4) the terms of Dror's employment were negotiated while Dror was in New Jersey; (5) Dror signed his employment contract in New Jersey. Pl.'s Opp., ECF 11, 11-12.

The Court grants no weight to the first two asserted contacts because this suit arises from claims solely related to Plaintiffs' full-time employment contract and related promises with HUBX, not his prior part-time work he performed remotely from New Jersey. *Danziger & De Llano, LLP*, 948 F.3d at 129 (claims must "arise out of or relate to" Defendants' contacts). It is apparent from Dror Zeplovitch's own declaration that the terms of his employment were negotiated in both Florida and New Jersey. ECF No. 13 at ¶¶ 20-24; ECF No. 14 at ¶¶ 14-16. Zeplovitch states that he "shook hands on our arrangement" and returned to New Jersey where he signed the Offer of Employment that Wall had previously emailed. ECF No. 13 at ¶ 29. The central issue is whether this Court has specific personal jurisdiction over Defendants whose contacts with the forum state are that they negotiated Plaintiff's employment agreement with its citizen, persuaded him to relocate to a different state for employment purposes where Plaintiff primarily worked, and allegedly violated that agreement outside of the forum state.

Plaintiff's cite to *Schley v. Microsoft Corp.*, No. 08 Civ. 3589 (DRD), 2008 WL 5075266, at *11-12 (D.N.J. Nov. 24, 2008), for the proposition that personal jurisdiction exists where Defendants avail themselves of a forum state's labor market and engage in negotiations with a Plaintiff residing there. While this case is somewhat similar to *Schley*, it is distinguishable in meaningful ways. While the *Schley* defendant availed itself of the forum state's—New Jersey's—labor market via an internet job posting, here, Zeplovitch's professional collaborator directly recruited him. Whereas in *Schley*, employment was primarily negotiated via communications to New Jersey, here, employment was negotiated in Florida and New Jersey. In *Schley*, the Defendant mailed a revocation letter to Plaintiff's home in the forum state and sent emails to a "home email account." Here, Defendants corresponded with Dror via email, which was presumably accessible from virtually anywhere. In *Schley*, the Plaintiff had no employment relationship with Defendant whereas here, Plaintiffs had a several-month's-long employment relationship with Defendants in Florida. In *Schley*, the contract at issue was allegedly breached in the forum state. Here, the contract at issue was allegedly breached in Florida.

While the Court recognizes that "contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum," *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993), the Court also takes into account the Supreme Court's guidance that prior negotiations be considered with "contemplated future consequences," all of which here suggest prospective contract performance exclusively in Florida. *See Mellon Bank (East) PSFS, Nat. Ass'n*, 960 at 1223 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 579 (1985)). The "purposeful availment" requirement of the specific personal jurisdiction analysis ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. But the state of New Jersey is completely incidental to this suit. Here, the Florida Defendants entered into contract negotiations with the then-New Jersey and Maryland Plaintiffs with the chief goal of making them Florida residents. Crucially, it seems likely that if Plaintiffs had refused to relocate to

4

Florida, the parties would not have ever entered the employment relationship that is the subject of this lawsuit. While Plaintiff's filings aim to make clear that Defendants were well aware that Plaintiff Dror resided in New Jersey, they ultimately show how important Plaintiff Dror's presence in Florida was to all future consequences of the parties' employment relationship.[2]

Florida, the parties would not have ever entered the employment relationship that is the subject of this lawsuit. While Plaintiff's filings aim to make clear that Defendants were well aware that Plaintiff Dror resided in New Jersey, they ultimately show how important Plaintiff Dror's presence in Florida was to all future consequences of the parties' employment relationship.[2]

For these reasons, the Court must conclude that plaintiff has failed to establish a prima facie case of personal jurisdiction.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, ECF No. 9, is **GRANTED.** Plaintiffs' Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

Dated: September 29, 2020

                                                 */s/ William J. Martini*
                                                 **WILLIAM J. MARTINI, U.S.D.J.**

---

[2] For instance, Motty Chen testified that "Wall specifically asked me to convince Dror to move down to Florida, and not just work remotely; Wall strongly preferred an in-person workplace where employees are physically present and interact with each other face-to-face on a daily basis. . . . [W]e agreed that we would use Dror for contract work again until we could convince him to come work for HUBX permanently as a full-time employee." Chen Decl., ECF No. 14, ¶ 13.